AO 106 (Rev. 04/10) Application for a Search Warrant

## UNITED STATES DISTRICT COURT

### for the

Southern District of California

FILED

JUN 18 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No.   **18MJ3372** |
| Four Digital Storage Devices located at Homeland Security Investigations Office | ) |
| | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 2252 and 2252A | Distribution, receipt, and possession of child pornography |

The application is based on these facts:

See Attached

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kayade Ereme, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _6-18-18_

_____
*Judge's signature*

City and state:  San Diego, CA

Nita L. Stormes, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Special Agent Kayade Ereme, upon being duly sworn do hereby state that the following is true to my knowledge and belief:

### Training and Experience

1.     I am a Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) and have been so employed since April 2013.  I am currently assigned to the HSI Child Exploitation Group in San Diego, California.   From August 2014 until March 2018, I was assigned to the Deputy Special Agent in Charge San Ysidro (DSAC San Ysidro Office) in San Diego, California where I specialized in narcotics and contraband smuggling investigations.  I was assigned to a narcotics smuggling unit known as the San Diego County Sheriff's Border Crime Suppression Team.   My duties included investigating the illicit trafficking of controlled substances into the United States of America while working in conjunction with the San Diego County Sheriff's Department.  I was assigned to the Office of the Special Agent in Charge, Baltimore (SAC Baltimore) until February 2014.  While assigned to SAC Baltimore, I worked with the Gang Unit and assisted in the investigation of a Racketeering Influenced and Corrupt Organization (RICO) investigation targeting the MS-13 Street Gang and their affiliates.

2.     I graduated Magna Cum Laude from Bowie State University with a Bachelor of Science Degree in Criminal Justice.  I am a graduate of the Criminal Investigator Training Program administered by the Federal Law Enforcement Training Center (FLETC) located in Glynco, CA, as well as the HSI Special Agent Training (HSISAT) program.  Throughout my tenure with HSI, I have conducted and/or participated in numerous investigations including narcotics, financial crimes, and child pornography investigations.   I have received specialized training in

conducting Internet investigations regarding the sexual exploitation of minors, child pornography, and the preservation and review of computer related evidence. As part of my current duties with the ICAC task force, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, and 2252A. Additionally, I have had the opportunity to observe and review many examples of child pornography (as defined in 18 U.S.C. § 2256) in numerous forms of media including computer media, and I have participated in the execution of numerous search and arrest warrants.

### Purpose of Affidavit

3.    This affidavit is made in support of an application for a warrant to search certain digital items currently in the possession of Homeland Security Investigations, located at 880 Front Street., Suite 3200, San Diego, CA 92101, in the Southern District of California, more particularly described in Attachment A (the **SUBJECT DEVICES**), and to seize items relating to violations of 18 U.S.C. §§ 2252 & 2252A, as more particularly described in Attachment B.

4.    This affidavit is based upon information I have gained through training and experience, as well as upon information related to me by other individuals, including law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known concerning this investigation but have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant.

5.    Based upon the following information, there is probable cause to believe that currently located on the SUBJECT DEVICES, there is evidence, fruits and instrumentalities of violation of 18 U.S.C. §§ 2252 and 2252A, more particularly described in Attachment B.

**The Investigation**

6.      The HSI San Diego, Child Exploitation Group is investigating the distribution of child pornography via P2P file sharing networks on the Internet.

7.      On April 17, 2018, United States Magistrate Judge Andrew Schopler signed a federal search warrant for the San Diego residence of David WEAKS (Case No. 18mj1822), the physical location associated with IP address 70.95.38.155 on a date and at a time that an HSI San Diego agent downloaded child pornography from the address. The warrant authorized a search for, and seizure of, evidence of violation of 18 U.S.C. §§ 2252 and 2252A. Members of the Internet Crimes Against Children (ICAC) Task Force executed the warrant at the San Diego residence on April 19, 2018. While the warrant was being executed, an initial forensic review of some of WEAKS' computer devices and media was conducted by members of the HIS Computer Forensic Group.   During this initial review, numerous child pornography files were identified.   In addition, peer-to-peer file sharing software was found on the computer devices. The computer and digital devices were seized pursuant to the warrant, and forensic review of the items is ongoing.

8.      During the execution of the search warrant, special agents advised WEAKS of his Miranda rights, and WEAKS waived those rights. I then interviewed him. During the interview, WEAKS admitted to obtaining and distributing child pornography via a peer-to-peer file sharing program. WEAKS admitted that he understood how the file sharing program worked, by allowing other people to obtain items he had on his computer, and that by using the software he made the videos of child pornography available for others to download through the Internet. In addition, WEAKS admitted to knowledge and possession of child pornography on an external hard drive seized from his home.

9.      WEAKS was arrested on April 19, 2018, and charged with distribution of images of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2).

10.     Prior to his arrest, WEAKS was employed as a teacher at Rosa Parks Elementary School, in the San Diego Unified School District. On April 19, 2018, after the search warrant was executed at WEAKS' residence, a San Diego Unified School District Police Officer went to WEAKS' classroom at Rosa Parks Elementary and took possession of two computers from the classroom.  An HSI computer forensic agent conducted a preview of the computers and found them negative for evidence of child pornography.

11.     On or about April 25, 2018, a substitute teacher who took over WEAKS' class and classroom at Rosa Parks Elementary, located four (4) USB thumb drives (the **SUBJECT DEVICES**) in a clear plastic container in the classroom previously occupied by WEAKS. The clear plastic container was located in a set of cubby shelves, which had the teacher's work station desk next to it. The substitute teacher turned the **SUBJECT DEVICES** over to the school Principal, who gave them to a San Diego Unified School District Department Sergeant. The **SUBJECT DEVICES** were thereafter transferred to my custody and put into evidence at the HSI office located at 880 Front Street, Suite 3200, San Diego, CA 92101.   To my knowledge, no one at the school looked at the content of the **SUBJECT DEVICES** prior to transferring them to me.  The **SUBJECT DEVICES** are described in Attachment A and as follows:

- Ativa USB with identifying number 7-35854-88725-4
- Lexar USB 16 GB with identifying number LJDTT16G-000-1001AU
- Sandisk USB 4 GB with identifying number BH11106WTZB
- 16 GB SDCZ33 with identifying number BL140324734D

12.     As a result of my training and experience in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the distribution and collection of child pornography:

a.     Individuals who collect and distribute child pornography tend to be sexually attracted to children. Their sexual arousal patterns and erotic imagery focus, in part or in whole, on children.  The collection may be exclusively dedicated to children of a particular age, gender, or other set of characteristics, or it may be more diverse, representing a variety of sexual preferences, including children.  Child pornography collectors express their attraction to children through the collection of sexually explicit materials involving children as well as other seemingly innocuous material related to children.  These individuals may derive sexual gratification from actual physical contact with children as well as from fantasies involving the use of pictures or other visual depictions of children or literature describing sexual contact with children.  The overriding motivation for the collection of child pornography and erotica is to define, fuel, and validate the collector's most cherished sexual fantasies involving children.   Visual depictions may range from fully clothed children engaged in non-sexual activity to nude children engaged in explicit sexual activity.

b.     Individuals who collect child pornography tend to treat their material as prized possessions and are especially unlikely to part with them.  Even if the collector feels threatened by exposure to law enforcement, he will usually seek to preserve his collection by hiding it better, such as in their vehicle, rather than by destroying it. The collection may be culled and refined, but the size of the collection tends to increase over time.  This is particularly true since digital storage media have

1    increased in storage capacity as they have decreased in cost. Even in cases where
2    the collector may attempt to delete portions of his child pornography collection in
3    order to avoid detection by law enforcement or others, tools used by law enforcement
4    forensic examiners are often able to retrieve the deleted items, even after the passage
5    of time.

6           c.    In fact, many collectors protect their collections by creating
7    back-ups, sometimes multiple back-ups, of some or all of the collection. Child
8    pornography, unlike some other kinds of contraband (e.g. drugs), is not "consumed"
9    by the user. The "consumption" of this product results in its proliferation; more
10   copies are generated. The very nature of computers as a means of collection,
11   transmission, and/or storage lends itself to permanent preservation of the item. If
12   the collector relocates, his collection almost always moves with him.

13          d.    Individuals who collect child pornography tend to maintain and
14   possess their material in the privacy and security of their homes or some other secure
15   location like their vehicles where it is readily available. The collection may include
16   sexually explicit or suggestive materials involving children, such as photographs,
17   digital images, magazines, narratives, motion pictures, DVDs, CD-ROMs, video
18   tapes, books, slides, drawings, computer images or other visual media.

19          e.    Individuals who have a sexual interest in children or images of
20   children also may correspond with and/or meet others to share information and
21   materials; rarely destroy correspondence from other child pornography
22   distributors/collectors; conceal such correspondence as they do their sexually
23   explicit material; and often maintain lists of names, addresses, and telephone
24   numbers of individuals with whom they have been in contact and who share the same
25   interests in child pornography.

26

27

1           f.      Individuals who have a sexual interest in children or images of

2    children prefer not to be without their child pornography for any prolonged time

3    period.  This behavior has been documented by law enforcement officers involved

4    in the investigation of child pornography throughout the world.

5          13.    WEAKS, who previously occupied the classroom in which the devices

6    were located, exhibits the common characteristics described above of someone

7    involved in the distribution, receipt, and possession of child pornography, as

8    evidenced by the facts that are set forth in this Affidavit, including the fact that he

9    knowingly distributed and possessed child pornography through the use of a peer-

10   to-peer file sharing program.

**Procedures for Electronically Stored Information
as to the Electronic Storage Devices**

14.    With the approval of the Court in signing this warrant, agents executing

this search warrant will employ the following procedures regarding the electronic

storage media that may contain data subject to seizure pursuant to this warrant:

Seizure and Retention of Instrumentalities

      a.      Based upon the foregoing, there is probable cause to believe that

the electronic storage devices are instrumentalities of the enumerated offenses

because there is probable cause to believe that they may contain contraband and

fruits of crime as provided under Rule 41(c)(2), Fed. R. Crim. P., or were used in

committing crime as provided under Rule 41(c)(3), Fed. R. Crim. P.  Consequently,

the electronic storage devices are subject to seizure, retention and possible forfeiture

and destruction.  Electronic storage devices and media confirmed to contain

contraband constitute fruits of crime or to have been used to commit a crime will not

be returned but will be imaged offsite and analyzed as provided beginning at

subparagraph (c) below.

b.    The offsite imaging and preliminary analysis of the electronic storage devices and media to confirm their status as instrumentalities will be conducted within forty five (45) days of seizure. Seized items confirmed to be instrumentalities will not be returned and will be further analyzed as provided below. If the preliminary analysis, by definition an incomplete or partial analysis, does not confirm that a seized item is an instrumentality, the original item will be returned promptly to its owner, absent an extension of time obtained from the owner or from the court. An image of the items will be retained and subjected to a complete forensic analysis, as provided below.

c.    Electronic storage devices and media that are retained as instrumentalities will not be returned to its owner. The owner will be provided the name and address of a responsible official to whom the owner may apply in writing for return of specific data not otherwise subject to seizure for which the owner has a specific need. The identified official or other representative of the seizing agency will reply in writing. In the event that the owner's request is granted, arrangements will be made for a copy of the requested data to be obtained by the owner. If the request is denied, the owner will be directed to Fed. R. Crim. P. 41(g).

<u>Identification and Extraction of Relevant Data</u>

d.    A forensic image is an exact physical copy of the hard drive or other media. After obtaining a forensic image, the data will be analyzed to identify and extract data subject to seizure pursuant to this warrant. Analysis of the data following the creation of the forensic image can be a highly technical process requiring specific expertise, equipment and software. There are literally thousands of different hardware items and software programs, and different versions of the same program, that may be commercially purchased, installed and custom-configured on a user's computer system. Computers are easily customized by their

1    users.    Even apparently identical computers in an office environment may be
2    significantly different with respect to configuration, including permissions and
3    access rights, passwords, data storage and security.  It is not unusual for a computer
4    forensic examiner to have to obtain specialized hardware or software, and train with
5    it, in order to view and analyze imaged data.

6             e.    Analyzing the contents of a computer or other electronic storage
7    device, even without significant technical issues, may be very challenging.
8    Searching by keywords, for example, often yields many thousands of hits, each of
9    which must be reviewed in its context by the examiner to determine whether the data
10   is within the scope of the warrant.  Merely finding a relevant hit does not end the
11   review process.  The computer may have stored information about the data at issue:
12   who created it; when and how it was created or downloaded or copied; when it was
13   last accessed; when it was last modified; when it was last printed; and, when it was
14   deleted. Sometimes it is possible to recover an entire document that never was saved
15   to the hard drive if the document was printed.  Moreover, certain file formats do not
16   lend themselves to keyword searches.    Keywords search text.    Many common
17   electronic mail, database and spreadsheet applications do not store data as searchable
18   text.  The data is saved in a proprietary non-text format. Documents printed by the
19   computer, even if the document never was saved to the hard drive, are recoverable
20   by forensic programs but not discoverable by keyword searches because the printed
21   document is stored by the computer as a graphic image and not as text.  Similarly,
22   faxes sent to the computer are stored as graphic images and not as text.  In addition,
23   a particular relevant piece of data does not exist in a vacuum.  To determine who
24   created, modified, copied, downloaded, transferred, communicated about, deleted or
25   printed the data requires a search of other events that occurred on the computer in
26   the time periods surrounding activity regarding the relevant data. Information about

27

1    which user had logged in, whether users share passwords, whether the computer was
2    connected to other computers or networks, and whether the user accessed or used
3    other programs or services in the time period surrounding events with the relevant
4    data can help determine who was sitting at the keyboard.

5            f.      It is often difficult or impossible to determine the identity of the
6    person using the computer when incriminating data has been created, modified,
7    accessed, deleted, printed, copied, uploaded or downloaded solely by reviewing the
8    incriminating data. Computers generate substantial information about data and about
9    users which generally is not visible to users. Computer-generated data, including
10   registry information, computer logs, user profiles and passwords, web-browsing
11   history, cookies and application and operating system metadata, often provides
12   evidence of who was using the computer at a relevant time. In addition, evidence
13   such as electronic mail, chat sessions, photographs and videos, calendars and address
14   books stored on the computer may identify the user at a particular, relevant time.
15   The manner in which the user has structured and named files, run or accessed
16   particular applications, and created or accessed other, non-incriminating files or
17   documents, may serve to identify a particular user. For example, if an incriminating
18   document is found on the computer but attribution is an issue, other documents or
19   files created around that same time may provide circumstantial evidence of the
20   identity of the user that created the incriminating document.

21           g.      Analyzing data has become increasingly time-consuming as the
22   volume of data stored on a typical computer system and available storage devices
23   has become mind-boggling. For example, a single megabyte of storage space is
24   roughly equivalent of 500 double-spaced pages of text. A single gigabyte of storage
25   space, or 1,000 megabytes, is roughly equivalent of 500,000 double-spaced pages of
26   text. Computer hard drives are now being sold for personal computers capable of

27

storing up to 2 terabytes (2,000 gigabytes) of data. And, this data may be stored in a variety of formats or encrypted (several new commercially available operating systems provide for automatic encryption of data upon shutdown of the computer). The sheer volume of data also has extended the time that it takes to analyze data. Running keyword searches takes longer and results in more hits that must be individually examined for relevance. And, once reviewed, relevant data leads to new keywords and new avenues for identifying data subject to seizure pursuant to the warrant.

        h.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including the use of hashing tools to identify evidence subject to seizure pursuant to this warrant, and to exclude certain data from analysis, such as a known operating system and application files. The identification and extraction process may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within one-hundred twenty (120) days from the date of seizure pursuant to this warrant, absent further application to this court.

        i.     All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## Genuine Risks of Destruction of Data

15.    The items to be searched pursuant to this application are in the possession of HSI such that there is no genuine risk of destruction of evidence.

## Prior Attempts to Obtain Data

16.    The United States has not attempted to obtain this data by other means.

//

//

1

## Request for Sealing

2       17.    It is respectfully requested that this Court issue an Order sealing, with

3 disclosure permitted to defendant's counsel pursuant to an early disclosure

4 agreement or Rule 16, Fed. R. Crim. P. or until further order of this court, all papers

5 submitted in support of this Application, including the Application, Affidavit,

6 Attachments and Search Warrant, and the requisite inventory notice. Sealing is

7 requested because of the sensitive nature of the ongoing investigation and because

8 premature disclosure of the contents of this affidavit and related documents may

9 have a negative impact on this continuing investigation and may jeopardize its

10 effectiveness.

11

## Conclusion

12       18.    Based on the aforementioned factual information, I respectfully submit

13 that there is probable cause to believe that evidence, fruits, and instrumentalities of

14 violations of 18 U.S.C. §§ 2252 and 2252A, may be located on the SUBJECT

15 DEVICES described in Attachment A.  I, therefore, respectfully request that the

16 attached warrant be issued authorizing the search and seizure of the items listed in

17 Attachment B.

18

19                 Kayade Ereme, Special Agent

20                 Homeland Security Investigations
                U.S. Immigration and Customs Enforcement

21

22 SUBSCRIBED and SWORN to before me this ___18___ day of June, 2018.

23

24                 Hon. NITA L. STORMES

25                 UNITED STATES MAGISTRATE JUDGE

26

27

## ATTACHMENT A
## ITEMS TO BE SEARCHED

The devices to be searched are described as follows:

- Ativa USB with identifying number 7-35854-88725-4
- Lexar USB 16 GB with identifying number LJDTT16G-000-1001AU
- Sandisk USB 4 GB with identifying number BH11106WTZB
- 16 GB SDCZ33 with identifying number BL140324734D

located at Homeland Security Investigations Office at 880 Front Street., Suite 3200, San Diego, CA 92101.

## **ATTACHMENT B**
## **ITEMS TO BE SEIZED**

Authorization is sought to search for and seize evidence that relates to violations of 18 U.S.C. §§ 2252 & 2252A.  The search of the digital media will be conducted in accordance with the "Procedures For Electronically Stored Information As To Electronic Storage Devices" provided in the affidavit submitted in support of this warrant.  Items to be seized include the following:

a.      All data storage devices.

b.      All documents, including all temporary and permanent electronic files and records, (including, but not limited to, JPG, GIF, TIF, AVI, WAV and MPEG files) which contain, attach, or describe child pornography or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

c.      User-attribution data to include data reflecting who used or controlled the computer or electronic storage device at or around the time that data reflecting criminal activity within the scope of this warrant was created, accessed, deleted, modified, copied, downloaded, uploaded or printed.   User-attribution data includes registry information, computer logs, user profiles and passwords, web-browsing history, cookies, electronic mail stored on the computer or device, electronic address books, calendars, instant messaging logs, electronically-stored photographs and video, file structure and user-created documents, including metadata.

d.      Any and all materials or items which are sexually arousing to individuals who are interested in minors, but which are not in and of themselves obscene or which do not necessarily depict minors involved in sexually explicit conduct.  Such material is commonly known as "child erotica" and includes written materials dealing with child development, sex education, child pornography, sexual abuse of children, incest, child prostitution, diaries about sexual contact with children, and fantasy writings relating to children.

e.     Any record or document that shows the offer to transmit or receive any depictions of a minor engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

f.     Electronically stored communications or messages reflecting computer on-line chat sessions or e-mail messages with any persons regarding the possession, receipt, distribution, advertising and/or reproduction of child pornography, as defined in as defined in 18 U.S.C. § 2256.